UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA ex rel.
ROBERT C. SMITH, M.D.,

                Relator,      **MEMORANDUM AND ORDER**

    - against -       06 Civ. 4056 (NRB)

NEW YORK PRESBYTERIAN HOSPITAL AND
CORNELL UNIVERSITY JOAN AND SANFORD
I. WEILL MEDICAL COLLEGE,

              Defendants.

----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Relator Robert C. Smith ("Smith") brings this action <u>qui</u> <u>tam</u> against defendants New York Presbyterian Hospital ("NYPH") and Cornell University Joan and Sanford I. Weill Medical College ("Cornell") (collectively the "New York Defendants"), alleging fraud and retaliation in violation of the federal False Claims Act, 31 U.S.C. §§ 3729 <u>et</u> <u>seq.</u> (the "FCA"), and asserting claims for defamation, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and violations of New York Labor Law § 741 ("Section 741").[1] Smith also alleges breach of contract by Cornell. Defendants

---

[1] The FCA "authorizes private citizens to sue on behalf of the United States to recover treble damages from those who knowingly make false claims for money or property upon the Government or who knowingly submit false statements in support of such claims or to avoid the payment of money or property to the Government." <u>U.S. ex rel. Lissack v. Sakura Global Capital Mkts., Inc.</u>, 377 F.3d 145, 146 (2d Cir. 2004).

now move to dismiss Smith's claims pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(6) and 12(h)(3).  For the reasons stated below, we grant defendants' motions with respect to all of Smith's claims, except his claim for retaliation under the FCA.

## BACKGROUND

This lawsuit arises out of Smith's work with the New York Defendants from July of 1999 through the summer of 2003.[2]  Smith, a medical doctor licensed to practice in New York and Connecticut, was a Professor of Radiology and an Associate Chair of Information Technology and Systems Administration in Cornell's Radiology Department and was an Attending Radiologist at NYPH.[3]  Smith alleges that he observed NYPH and Cornell perpetrating a scheme to defraud Medicare/Medicaid (the "FCA fraud").

Smith's FCA fraud claim involves the taking and reading of radiological studies (e.g. x-rays, MRIs and other radiological images and data).  Radiological studies comprise two components.  Physicians complete the "Professional Component" by ordering studies where appropriate and by reading and reviewing those

---

[2] Third Amended Complaint, dated November 24, 2004 (the "Third Amended Complaint"), ¶ 7.

[3] U.S. ex rel. Smith v. Yale Univ. and Yale-New Haven Hospital, Inc. et al., 411 F.Supp.2d 64, 66 (D.Conn. 2005); Letter of Gary Schulz, dated August 9, 2006 ("Cornell Letter"), at 4, n.3; Third Amended Complaint, ¶ 63.

studies once completed.[4]   Hospital technicians complete the "Technical Component" by taking the radiological images and/or data and returning them to the ordering physicians.[5]   To support his claim for FCA fraud, Smith alleges that both components must be completed before an entity can properly bill Medicare/Medicaid for either component, and that NYPH and Cornell perpetrated a fraud on the government by repeatedly violating this rule.[6]

Smith asserts that a Medicare/Medicaid provider can only bill for radiological studies containing both a completed Technical Component and a completed Professional Component because, according to Smith, if either component is lacking, the provider cannot demonstrate that the radiological study was "medically necessary" as required to receive payment from Medicare/Medicaid.[7]   He further alleges that, during his time with the New York Defendants, NYPH regularly conducted radiological studies, having been ordered to do so by Cornell, and then billed the government for the Technical Component of those studies without waiting for physicians at Cornell to complete the corresponding Professional Component.[8]   He alleges

---

[4] Third Amended Complaint, ¶ 12.
[5] Id.; United States ex rel. Smith v. Yale University et al., No. 02 Civ. 1205 (PCD), 2006 WL 566440, *1 (D.Conn. March 7, 2006) (vacated in part by Smith v. Yale University et al., No. 02 Civ. 1205 (PCD), 2006 WL 1168446 (D.Conn. Apr. 28, 2006)).
[6] See e.g. Third Amended Complaint, ¶ 84.
[7] See e.g. id. ¶ 83.
[8] Id. ¶¶ 82-85.

that NYPH accomplished this, in part, by using a computer system that automatically submitted bills for the Technical Component of studies without waiting for those studies to be "finalized" by Cornell's completion of the Professional Component, and that NYPH could have and should have programmed its computer system to bill only for "finalized" studies.[9]   Smith does not allege that Cornell submitted any fraudulent bills to Medicare/Medicaid, but asserts that Cornell conspired with NYPH to do so.[10]

Smith further alleges that employees of NYPH and Cornell retaliated against him in response to his investigation of the FCA fraud.   Smith pleads that, starting in around October of 1999 and continuing for at least two and one-half years, he "complained about a number of billing, compliance and patient care issues" at NYPH and Cornell, and that, "[b]ecause of his investigation and reporting of [the FCA fraud], [he] was harassed and was discriminated against in the terms and conditions of his employment."[11]   More specifically, Smith states that he complained to Dirk Sostman, M.D., who was then Chairman of the Department of Radiology at Cornell and Radiologist-in-Chief at NYPH, that NYPH had "[i]properly bill[ed] the Medicare and Medicaid Programs and other payers for Completed but Not

---

[9] Id. ¶¶ 77-84.
[10] Id. ¶ 90.
[11] Id. ¶ 66, 207.

Read Radiology Studies", and that Dr. Sostman responded by disregarding, ignoring and harassing Smith.[12]   Smith further pleads that he complained about these and other issues related to improper billing, by letters and at meetings, to a long list of administrative personnel at Cornell and NYPH, including Antonio Gotto, M.D., the Dean of Cornell, and that this too bred retaliation.   Smith says that, because of his complaints, he: (1) "lost access to some of the administrative computerized systems [at NYPH]" and that access to those computer systems was "critical to the performance of his administrative and professional functions; (2) that he was informed on June 28, 2002 that his employment contract with Cornell and NYPH would not be renewed; (3) that he received a threatening letter in May of 2003 from Steve Forman, the Vice President of Corporate Compliance and Audits at NYPH; and (4) that Dean Gotto refused, in late May of 2003, to respond to Smith's request for a leave of absence pending the ongoing investigation.[13]

## A.   Case History

Smith originally brought this lawsuit before Judge Peter C. Dorsey in the district court for the District of Connecticut in 2002, alleging the same theory of FCA fraud against the Yale School of Medicine ("Yale") and against Yale-New Haven Hospital

---

[12] Id. ¶¶ 66, 67, 207.
[13] Id. ¶¶ 66-69, 75, 76, 207, 209.

("YNHH").[14]  Smith worked as a professor of medicine at Yale, and as an attending physician at YNHH, from July of 1990 through June of 1999, when he left to work at NYPH and Cornell.[15]  He initially filed suit in July of 2000, and later filed several amendments to his complaint.[16]  The operative pleading in this case, Smith's Third Amended Complaint, dated November 24, 2004, is Smith's fifth set of pleadings and the first to assert claims against NYPH and Cornell.[17]

After Smith submitted his Third Amended Complaint, Yale was dismissed from the case by stipulation, and YNHH's motion for a dismissal of the entire complaint was granted.[18]  Judge Dorsey dismissed YNHH from the case, through a series of opinions, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6).  In his February 14, 2006 Opinion, Judge Dorsey dismissed Smith's FCA claim against YNHH pursuant to Rule 12(b)(1), finding that the District of Connecticut lacked jurisdiction under the FCA's Original Source Rule,[19] which bars FCA claims based on publicly disclosed information unless the plaintiff is an original source of that information.  Judge Dorsey held that the basis for Smith's claims had been publicly

---

[14] See e.g. United States ex rel. Smith v. Yale University et al., 415 F.Supp.2d 58 (2006).
[15] Third Amended Complaint, ¶ 7.
[16] Smith, 411 F.Supp.2d at 67.
[17] NYPH Letter at 3.
[18] Smith, 2006 WL 566440 at *1-2; Smith, 415 F.Supp.2d at 108-09.
[19] Smith, 415 F.Supp.2d at 82.

disclosed in a prior proceeding and that Smith was not an original source of that information.[20]   Judge Dorsey further held, in both his February 14, 2006 and March 7, 2006 Opinions, that Smith's complaint failed to plead fraud against YNHH with the particularity required by Rule 9(b), noting that his complaint did not assert a single, particular instance or example of a fraudulent claim.[21]

Finally, Judge Dorsey held, in his March 7, 2006 Opinion, that Smith's theory of fraud, namely his complaint that YNHH billed Medicare/Medicaid for the Technical Component of radiological studies before those studies were finalized by Yale, failed to state a cognizable legal claim.[22]   Judge Dorsey noted that Smith had provided no basis for his assertion that an entity could not bill the government solely for the Technical Component of a radiological study and that the assertion ignored the fact that the Technical and Professional Components have separate requirements and are performed by separate entities.[23] He further held, contrary to Smith's claims, that hospitals,

---

[20] Id. (citing 31 U.S.C. § 3730(e)(4) and United States v. New York Med. Coll., 252 F.3d 118, 120 (2d Cir. 2001)).

[21] Id. at 88-89; Smith, 2006 WL 566440 at *4-5.

[22] Smith, 2006 WL 566440 at *2-4 ("[Smith's] allegations that YNHH billed for technical services rendered in completed radiological studies when professional services related thereto were not completed or performed would not prove falsehoods and thus would not constitute 'fraud' as required for an FCA claim.  [Smith's] claims against YNHH must be dismissed as the Third Amended Complaint does not state a claim upon which relief can be granted.").

[23] Id. at *2 ("[Smith] does not . . . support his bald statements with a citation of a statutory or regulation provision [and] [t]he statements ignore the separate Technical Component rendered or performed by hospital technicians and not by physicians.").

like YNHH and NYPH, are entitled to bill for the Technical
Component of a study without waiting for the Professional
Component to be completed:

> As a provider of technical services, YNHH's
> obligations are not automatically merged
> with those of providers of professional
> services. A provider of technical services
> is entitled to rely on the judgment of
> physicians who order radiological studies
> and who diagnose and treat patients using
> those studies. Physicians' conduct is not
> shown to be a contingency to which YNHH is
> or should be subject in order to be entitled
> to compensation for rendered technical
> services.[24]

Judge Dorsey further noted that Smith's theory of proper
Medicare/Medicaid billing, if deemed the law, would have the
"illogical" effect of "disqualify[ing] YNHH from being paid for
services rendered if the physician's request or intended use of
the study deemed, before the fact, to be medically necessary,
was found, after the fact, to be medically unreasonable and/or
unnecessary."[25]  He concluded by stating:

> There is, therefore, no basis to find that
> YNHH is not entitled to be compensated for
> technical services for studies completed
> but, as categorized by [Smith], not read by
> a "qualified" physician or improperly
> processed as final either from Medicare or

---

[24] Id.

[25] Id. at *3. Judge Dorsey also wrote that "[t]o hold YNHH responsible
and deny payment if professional services related to completed radiological
studies were not performed would deny YNHH compensation based on deficiencies
of which it would not necessarily have knowledge and for which it has not
been shown to have responsibility or control. Absent a demonstrated
obligation on the part of YNHH to withhold billing for technical services
rendered, it would not be contrary to law for YNHH to bill for such
services."

Medicaid . . . . Absent a demonstrated
obligation on the part of YNHH to withhold
billing for technical services rendered, it
would not be contrary to law for YNHH to
bill for such services. Relator has not
alleged nor demonstrated authority or a
factual basis establishing such an
obligation. [As such], any billing for
completed studies by YNHH would not
constitute fraud as there has been no
showing of a falsehood on the part of YNHH
in doing so.[26]

Once Smith's claims against YNHH were dismissed, only his
claims against NYPH and Cornell remained before Judge Dorsey.
In his April 28, 2006 Opinion, Judge Dorsey transferred those
claims to the Southern District of New York, pursuant to 28
U.S.C. §§ 1404(a) and 1406(a), as NYPH and Cornell had no
meaningful connection to the District of Connecticut.[27]

**B.    Present Controversy**

Upon their arrival in this Court, NYPH and Cornell moved
for a dismissal pursuant to Rules 9(b), 12(b)(1), 12(b)(6) and
12(h)(3), arguing that Smith's claims should be dismissed for
the same reasons that Judge Dorsey dismissed his claims against
YNHH. On June 12, 2006, I instructed counsel for Smith to
submit a letter-brief to my chambers explaining why I should not
dismiss the case as suggested by NYPH and Cornell (the "June 12

---

[26] Id.
[27] Smith, 2006 WL 1168446 at *3-5. Judge Dorsey initially dismissed
Smith's claims against NYPH and Cornell for lack of jurisdiction and improper
venue. Smith, 2006 WL 566440 at *5-7. On Smith's motion for
reconsideration, Judge Dorsey vacated that decision and transferred Smith's
claims against those defendants to the Southern District of New York.

Letter"). I also permitted counsel for NYPH and Cornell to respond to Smith's submission. Smith submitted his letter on August 2, 2006 (the "Smith Letter"), addressing the bases for dismissal raised by defendants. The arguments in that missive, as well as the pertinent arguments presented in defendants' response letters, submitted on August 9, 2006 (the "NYPH Letter" and the "Cornell Letter"), are discussed infra. We now address defendants' motions.[28]

## DISCUSSION

### A.    Subject Matter Jurisdiction

Defendants first argue that Smith's claims should be dismissed pursuant to Rules 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction.[29] Specifically, defendants argue that Smith has provided no factual basis in his Third Amended Complaint for concluding that he is the original source of the information forming the basis for his FCA claims and, thus, that

---

[28] Around the time that we received the parties' letters, we were informed that Smith had appealed Judge Dorsey's decisions in favor of YNHH, and that a decision by the Second Circuit Court of Appeals in that case could impact our consideration of the current controversy. Given this, we delayed our consideration of defendants' motions pending the resolution of Smith's appeal. We received confirmation that Smith had settled his appeal out of court at the end of May, 2007.

[29] Federal Rule of Civil Procedure 12(h)(3) permits a party to challenge a court's subject matter jurisdiction at any time, without responding to a particular pleading. Fed. R. Civ. P. 12(h)(3). At this stage of a case, a motion made pursuant to that rule is not analytically distinct from one made pursuant to Rule 12(b)(1).

the Court lacks jurisdiction under the FCA's Original Source Rule.[30]

By the text of the statute, federal courts lack subject matter jurisdiction over FCA claims brought by a private plaintiff if the information forming the basis for those claims has been publicly disclosed in a prior hearing unless the plaintiff is an original source of that information. 31 U.S.C. § 3730(e)(4)(A) ("No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."); see also United States ex rel. Kriendler & Kriendler v. United Technologies Corp., 985 F.2d 1148, 1157 (2d Cir. 1993) (text of the FCA makes clear that section 3730(e)(4) presents an issue of subject matter jurisdiction); New York Med. College, 252 F.3d at 120 ("To qualify as an original source, a qui tam plaintiff must have . . . direct and independent knowledge of the information on which the allegations are based . . ."). As noted supra, Judge Dorsey held in his March 7, 2006 Opinion that the District of Connecticut lacked jurisdiction over Smith's claims against YNHH because those claims were based on publicly disclosed

---

[30] See NYPH Letter at 3.

information and because Smith was not an original source of that information.   In particular, Judge Dorsey noted that Smith learned the core of that information during discovery in a Connecticut state court case that he filed before suing the defendants in federal court (the "Connecticut State Action"), and that Smith could not prove direct and independent knowledge of that information.[31]

Judge Dorsey's prior holding notwithstanding, we have no basis for concluding that this Court lacks jurisdiction over Smith's claims against NYPH and Cornell.   On the contrary, Smith:  (1) states that the disclosures in the Connecticut State Action pertained only to Yale and YNHH and not to NYPH and Cornell;[32] (2) states that there has been no other public disclosure of the information giving rise to his claims against NYPH and Cornell;[33] and (3) pleads in his Third Amended Complaint that he is an "original source" of the information forming the basis for his claims, a fact he would only need to prove had there been a public disclosure of that information.[34] Accordingly, and since defendants have not contested Smith's first two assertions, we find that this Court has subject matter jurisdiction over Smith's claims.   See e.g. United States ex

---

[31] Smith, 2006 WL 566440 at *4; see also Burrell v. Yale Univ., No. 00 Civ. 01594210-S, 2003 WL 1477067 (Conn.Super. March 5, 2003).
[32] Smith Letter at 2-3.
[33] Id.
[34] Third Amended Complaint, ¶ 7.

rel. Barmak v. Sutter Corp. and Orthologic Corp. et al., No. 95
Civ. 7637 (KTD), 2002 WL 987109, *2 (S.D.N.Y. May 14, 2002)
("Because there is no evidence from which I could find [that
plaintiff's] allegations were disclosed in any way prior to the
filing of this action, I find that this Court has subject matter
jurisdiction"); see also Smith, 411 F.Supp.2d at 73 ("At the
initial stage of litigation, a party seeking to establish
jurisdiction need only make a prima facie showing by alleging
facts which, if true, would support the court's exercise of
jurisdiction.") (quoting Shlomo Marcus v. "Five J" Jewelers
Precious Metals Industry Ltd., 111 F.Supp.2d 445, 447 (S.D.N.Y.
2000) (internal marks omitted)).[35]

**B.   Rule 9(b)**

    **1.   Dismissal**

    Defendants next argue that Smith has failed to plead FCA
fraud with the requisite particularity.   In their papers,
defendants adopt Judge Dorsey's view of Smith's Third Amended
Complaint, namely that it consists solely of conclusory
allegations regarding events spanning a number of years that are

---

[35] Defendants cite United States ex rel. Dhawan & Growie v. New York
City Health and Hospital Corp., No. 95 Civ. 7649 (LMM), 2000 WL 1610802
(S.D.N.Y. October, 27, 2000) for the proposition that plaintiff's "mere
statement that he is an original source is insufficient and his failure to
elaborate is jurisdictionally fatal."   However, Dhawan & Growie is analogous
to the facts discussed in Judge Dorsey's March 7, 2006 Opinion and is not
analogous to the facts of the present dispute.   In Dhawan & Growie, the
parties agreed that there had been a prior disclosure in an earlier state
court action, and the court held, based on evidence before it, that Dhawan
and Growie clearly were not original sources of the information forming the
basis of their complaint.   Id. at *4-5.

based primarily on second-hand information or upon Smith's information and belief, and that it fails to state a single specific instance of a defendant submitting a fraudulent bill to the government. Judge Dorsey described Smith's FCA fraud claim against YNHH in his March 7, 2006 Opinion as follows:

> Relator's allegations suggest, in a conclusory manner, that professional services related to radiological studies were not performed and that YNHH billed for such studies . . . . The allegations in [the] complaint are fraught with assumptions and conclusions which do not suffice to establish the essential facts of an FCA claim and are devoid of the facts necessary to support such a claim.[36]

This comment reiterated Judge Dorsey's holding in his February 14, 2006 Opinion:

> Here, [Smith] has alleged that false claims were submitted, but has not identified a specific amount of charges that were submitted, provided the dates that false claims were submitted or provided a copy of a single bill or payment. His allegations of fraudulent billing are primarily conclusory summations and assumptions or allegations based solely on "information and belief." If [Smith] is unable to identify a single false claim arising from the alleged scheme of fraud or at least set forth an adequate basis on which his belief is based, he cannot meet even a "bare-bones Rule 9(b) test."[37]

Judge Dorsey further noted, in the February 14, 2006 Opinion, that these deficiencies in Smith's pleadings unfairly deny the

---

[36] Smith, 2006 WL 566440 at *4.
[37] Smith, 415 F.Supp.2d at 86.

defendants notice of the alleged fraud: "Without a description of any actual fraudulent billing, Defendant is forced to search its records for evidence to prove it did not commit fraud, releasing [Smith] from the burden of proving that fraud was actually committed."[38]

In his August 2, 2006 letter, Smith responds that Judge Dorsey's opinions should not influence the Court when considering his pleadings under Rule 9(b) because Judge Dorsey only evaluated Smith's claims against YNHH. He further argues that his complaint pleads FCA fraud with the requisite particularity. Regarding the particularity of his claim, Smith argues that he has adequately plead the "who, what, where, when and how" of the fraud:

> Paragraphs 60 and 61 of the Third Amended Complaint identifies (sic) "who" – [NYPH] and Cornell. For the "what", [Smith] alleges in paragraph 67 that [NYPH] and Cornell . . . engaged in improperly billing Medicare and Medicaid Programs and other payers for radiological studies . . . that were "completed but not read." For the "where", Smith establishes that while the fraudulent billing occurred only at [NYPH], the conspiracy to commit fraud extended to Cornell. To satisfy "when", Smith claims in paragraph 67 that this practice took place for at least six years. Finally, for "how", [Smith] alleges that [NYPH] falsely certified that the Radiology Studies were medically necessary and provided in a timely fashion in accordance with the standard of

---

[38] Id. at 88.

care (citing the Third Amended Complaint, ¶ 83).[39]

Smith further directs the Court to exhibits attached to his Memorandum of Law in Opposition to the Defendants' Motions to Dismiss ("Smith Opposition") as evidence of specific instances of fraud, noting that his complaint expressly incorporated these exhibits into his pleadings.[40]

It is well-established that the heightened pleading standard of Rule 9(b), which states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity", applies to suits under the FCA.  Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476-77 (2d Cir. 1995).  Generally speaking, Rule 9(b) requires a plaintiff alleging fraud to:  (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.  Shields v. Citytrust Bancorp., 25 F.3d 1124, 1128 (2d Cir. 1994); see also Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004).  These requirements promote three purposes of Rule 9(b), namely:  (1) ensuring that defendants have sufficient notice of plaintiff's claims; (2) discouraging strike suits; and (3) preventing the filing of suits that simply hope to uncover the basis for some

---

[39] Smith Letter at 12.
[40] Id. at 14.

previously unspecified wrongdoing.  O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991); see also Madonna v. U.S., 878 F.2d 62, 66 (2d Cir. 1989) ("One of the purposes of Rule 9(b) is to discourage the filing of complaints 'as a pretext for discovery of unknown wrongs.'") (quoting Gross v. Diversified Mortgage Investors, 431 F.Supp. 1080, 1087 (S.D.N.Y. 1977)); Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 116 (2d Cir. 1982) ("Rule 9(b) [fails] in its purpose if conclusory generalizations . . . permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some sort of wrongdoing ...").[41]

Having carefully reviewed Smith's Third Amended Complaint, we agree with defendants that Smith has failed to allege his theory of FCA fraud with the requisite particularity.  Although Smith's complaint does provide defendants with a rough sketch of his theory of FCA fraud, we find, for the following reasons, that it lacks the detail and specificity required by Rule 9(b).

First, we begin by noting that Judge Dorsey expressly addressed the paragraphs in Smith's complaint that formed the basis for his claim against YNHH, and that the same paragraphs form the basis for his claim against NYPH and Cornell.  As noted

---

[41] Given the purposes of Rule 9(b), pleadings generally cannot be based on information and belief unless they deal with matters "peculiarly within the adverse parties' knowledge" and, even then, the complaint must set forth facts upon which the belief or beliefs are founded.  Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972).

supra, Judge Dorsey found those allegations to be "fraught with assumptions and conclusions, which do not suffice to establish the essential facts of an FCA claim, and . . . devoid of the facts necessary to support such a claim."[42]

Second, our independent consideration leads to our concurrence with Judge Dorsey's assessment of the paragraphs forming the basis for Smith's FCA claim. Although Smith manages to sketch out the nature of that claim by generally stating the "who, what, where, when and how" of his theory of fraud, he fails to provide sufficient detail about that theory or about any specific fraudulent claim.[43] Notably, he does not list a single NYPH employee or hospital technician who is alleged to have been involved in submitting any of the thousands of purportedly fraudulent claims that went to the government[44] and he gives no specific amounts, dates or other details for any fraudulent claims either made or paid.[45]

---

[42] Smith, 2006 WL 566440 at *4.

[43] For instance, Smith summarily asserts at paragraphs 1 and 67 of his complaint that defendants billed for studies that were never taken, but fails to provide an example of, or any details about, any such bill.

[44] See Third Amended Complaint, ¶ 84.

[45] Smith only estimates that, together, NYPH and YNHH have improperly billed the government for over $24 million each year. Id. ¶ 4. Smith also does not state any specific basis for his conclusions that defendants repeatedly defrauded Medicare/Medicaid. He claims, for example, that "Defendant Hospitals individually and/or in combination or conspiracy, knowingly presented or caused to be presented to [the U.S. Government] false or fraudulent claims", but does not state that he, or anyone else, observed the submission of those claims.  Instead, Smith's assertions appear to be based on his "information and belief" regarding the nature of billing at YNHH and NYPH, as well as his second-hand review of certain hospital documents which he incorporates into his complaint by reference and which we discuss infra.

Third, although Smith's Complaint contains some allegations against NYPH and Cornell apart from those considered by Judge Dorsey, those allegations do not cure the lack of detail and specificity just discussed.  On the contrary, paragraphs 159 through 210, which make up the Third Cause of Action in Smith's complaint and refer exclusively to NYPH and Cornell, primarily allege that Smith faced retaliation from NYPH and Cornell after he complained about improper billing procedures.  They provide no more specific details about the alleged fraud and do not offer evidence or details regarding any specific fraudulent claim.

Fourth, despite the filing of this case in Connecticut in 2002, Smith still has not provided defendants with sufficient details regarding any particular fraudulent claim.[46]  Although he refers the Court to the exhibits appended to his Opposition, none of the exhibits provides evidence of a specific, fraudulent bill sent to and paid for by the government.  In fact, many of those exhibits have no relevance to Smith's theory of fraud and

---

[46] Smith cites <u>Mikes v. Strauss</u>, 889 F.Supp. 746 (S.D.N.Y. 1995), for the proposition that a plaintiff's failure to allege a specific instance of fraud is not necessarily fatal under Rule 9(b).  We recognize that a complaint may state a claim for fraud with sufficient particularity without listing any specific fraudulent claims, but nevertheless hold, for the reasons provided in this opinion as well as in Judge Dorsey's February 14, 2006 and March 7, 2006 Opinions, that Smith has failed to plead FCA fraud with particularity against NYPH and Cornell.  Our holding is the same under either a standard or a relaxed Rule 9(b) analysis.  <u>See</u> <u>e.g.</u> <u>Garner v. Enright</u>, 71 F.R.D. 656 (E.D.N.Y. 1976).

deal, instead, with matters such as Smith's apparent concern that NYPH had chronically under-billed for services performed.[47]

Accordingly, we dismiss Smith's FCA fraud claim for lack of particularly under Rule 9(b).  Smith's claim warrants dismissal because his allegations are devoid of the detail required to put defendants on notice of the particular fraudulent bills alleged and because, as Judge Dorsey noted before us, allowing Smith's claims to go forward as pled would improperly shift the burden of producing evidence from Smith to defendants and would allow Smith to use vague allegations of fraud to prompt a search for more specific evidence through protracted discovery.

_____

[47] See e.g. Smith Opposition, Ex. E at 2, ¶ 2.  Out of the numerous documents attached as exhibits, only one contains a paragraph that might plausibly be read to refer to a particular fraudulent claim.  Exhibit E contains an email in which Smith notes that "[o]f the 9 patients billed for a full doppler . . . 1 patient (MRN 2749243) had a portable abdomen with complete doppler performed but only the abdomen was completed and finalized in the Cerner system and appears on the report as the ordered exam."  This statement, however, is not sufficient to provide defendants with notice of either an individual fraudulent bill or of the alleged fraudulent scheme.  Smith does not say when the exam or the doppler in question happened, does not state who completed the exam or submitted the bill, does not state whether or not the Professional Component of the exam was ever completed (though he does suggest that only part of the exam was "finalized" in the Cerner system), and does not state that the bill is one of many fraudulent claims that occurred in the same manner or around the same time.  On the contrary, the "bill" in question appears in an email in which Smith complains about a number of errors made at NYPH, most of which appear to be unrelated to his fraud claim, including a putative bill "FOR A COMPLETE DOPPLER UNDER THE WRONG CPT CODE (93975)" when "a CAROTID ULTRASOUND WAS ACTUALLY PERFORMED."  The nature and content of the email suggest that Smith had found and complained about a series of bills that were erroneous, but not necessarily fraudulent or illegal.  Smith lists conclusions at the end of the email, none of which refers to illegality or fraud, and one of which states: "The errors place us in a bad position for an audit."  Id. at Ex. D, E.

## 2.   Dismissal with Prejudice

Pursuant to Rule 9(b), we further dismiss Smith's FCA fraud claim with prejudice.  A with-prejudice dismissal is appropriate under Rule 9(b) where there is a "good reason" to deny the plaintiff leave to amend, including where it appears that any amendment would be futile.  See Acito v. IMCERA Group, Inc., 47 F.3d 47, 54-55 (2d Cir. 1995) (citing Fed. R. Civ. P. 15(a)). We have already addressed and declined a request from Smith to file a fourth amended complaint in this case.  By letter dated July 26, 2006, we denied Smith leave to amend because, inter alia, the case had originally been filed approximately six years prior, it had already been the subject of four opinions issued by Judge Dorsey, Smith had already had several opportunities to amend his complaint, and Smith had needlessly delayed the case following its transfer to the Southern District of New York by thrice failing to timely follow this Court's instructions in the June 12 Letter.  Moreover, since Smith has now been unaffiliated with defendants for several years, it is highly unlikely that he would be able to plead fraud with sufficiently particularity even if granted leave to amend.   As the strength of these reasons has not diminished, Smith's FCA fraud claim is dismissed with prejudice.

**C.   Rule 12(b)(6)**

Defendants further argue that all of Smith's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  When considering a motion to dismiss pursuant to Rule 12(b)(6), we must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party.  Securities Investor Protection Corp. v. BDO Seidman, LLP, 222 F.3d 63, 68 (2d Cir. 2000).  Although a complaint attacked by a 12(b)(6) motion "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. --, 2007 WL 1461066, at *8 (May 21, 2007).  Plaintiffs' factual allegations must be sufficient to raise a right to relief beyond mere speculation.  Id.; Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) (bald assertions and conclusions of law are not adequate).

**1.   Fraud under the FCA**

Although we need not address Smith's FCA fraud claim given our dismissal of that claim pursuant to Rule 9(b) supra, we do so for the sake of completeness and because our Rule 12(b)(6) discussion further illustrates why providing Smith with leave to file a fourth amended complaint would be futile.  Smith's claim

is that NYPH violated the FCA by billing for the Technical Component of radiological studies without ensuring that the studies were "medically necessary" or, in other words, without ensuring that the Professional Component of those studies would later be completed by a physician at Cornell.[48]  As Smith stated in his August 2, 2006 letter to the Court, "The sum and substance of [the FCA fraud] claim is that the submission of a bill under Medicare and Medicaid to the federal government for radiological tests conducted, but not used for diagnosis or treatment of a patient, violates the FCA."[49]

Defendants argue, in pertinent part, that Smith previously offered this very theory of fraud against YNHH, that Judge Dorsey expressly held that the theory failed to state a cognizable claim under the FCA, that Judge Dorsey's holding is now the "law of the case" and, thus, that this Court should dismiss Smith's claims against NYPH and Cornell. Smith acknowledges that "the theory of [his] claims against NYPH is the same as the theory of his claims against YNHH and [that] there is a common method by which each are claimed to have perpetrated a fraud in violation of the FCA".[50]  He argues, however, that we should reject Judge Dorsey's decision because Judge Dorsey incorrectly concluded that hospitals could bill for

---

[48] Smith Letter at 3.
[49] Id.
[50] Id.

the Technical Component of a radiological study without ensuring that the Professional Component would be completed as well: "[Judge Dorsey] did not recognize the obligation the hospital and university had to ensure that billing the government for the technical component of radiological services would not occur or would be reversed when the service was medically unnecessary."[51]

Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). Accordingly, a court's re-consideration of a matter deemed "law of the case" is "extremely deferential."  In re Air Crash at Belle Harbor, MDL No. 1448, 2003 U.S. Dist. LEXIS 501 (S.D.N.Y. Jan. 15, 2003) (citing Washington Nat. Life Ins. Co. of New York v. Morgan Stanley & Co. Inc., 974 F. Supp. 214, 218-19 (S.D.N.Y. 1997)).[52] When a case has been transferred from one district to another, the doctrine "counsel[s] against the transferee court reevaluating the rulings of the transferor court" unless the governing law has been changed by an intervening decision of a superior court, new evidence has become available, a clear error has been made or reversal is necessary to prevent 'manifest

---

[51] Id.
[52] Courts should be "loathe" to revisit a previously decided issue except in rare circumstances, "such as when the initial decision was 'clearly erroneous and would work a manifest injustice.'" In re Air Crash at Belle Harbor, 2003 U.S. Dist. LEXIS at 501; see also Corporacion de Mercadeo Agricola v. Mellon Bank Int'l, 608 F.2d 43, 48 (2d Cir. 1979).

injustice'".   Hill Dermaceuticals v. Galderman, S.A., No. 03
Civ. 2509, 2003 U.S. Dist. LEXIS 8069, *1-2 (S.D.N.Y. May 15,
2003) (citing Chrysler Credit Corp. v. Country Chrysler, Inc.,
928 F.2d 1509, 1516 (10th Cir. 1991)).

As we discussed at length in the "Background" section
supra, Judge Dorsey squarely addressed Smith's theory of FCA
fraud in his March 7, 2006 Opinion and held that it could not
survive a motion to dismiss.  Since Smith acknowledges that he
offers the same theory of fraud against NYPH and Cornell, it is
the law of this case that Smith's complaint does not state a
cognizable claim of FCA fraud.  As we have no basis for
concluding that either substantial new evidence or an
intervening decision of a superior legal authority has emerged,
and since Smith has not provided the Court with any basis for
concluding that Judge Dorsey's holding works a manifest
injustice, we review Judge Dorsey's decision solely to determine
if it constituted a clear error of law.  As discussed below, we
find that Judge Dorsey correctly assessed and dismissed Smith's
FCA fraud claim.

Smith advances four arguments as to why Judge Dorsey
incorrectly concluded that NYPH could bill for the Technical
Component of a radiological study without ensuring that the
Professional Component was or would be completed as well.  None,
however, is persuasive.

First, Smith argues that hospitals have a duty to ensure that a radiological study is actually used for the diagnosis or treatment of a patient, which means waiting until the Professional Component is completed before submitting a bill. He asserts that this duty arises from a number of authorities, including 42 U.S.C. § 1395(a)(1)(A), which states that "no payment may be made under [the Medicare Statute] for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury".[53]   Unfortunately for Smith, and as Judge Dorsey held, none of the cited authorities, including Section 1395(a)(1)(A), requires a hospital that has completed the Technical Component of a radiological study to wait until the Professional Component is done before submitting a bill to the government.   Although Section 1395(a)(1)(A) states that providers may only bill for services that are reasonably and medically necessary, it does not state that a service provider is responsible for ensuring, after it has completed a study, that the study is actually used or reviewed.

Moreover, such a requirement would be illogical since it would prevent hospitals from billing for radiological studies that were medically necessary when they were ordered but that,

_____

[53] Smith Letter at 5 (citing U.S. v. Mackby, 261 F.3d 821 (9th Cir. 2001) and United Seniors Ass'n v. Shalala, 182 F.3d 965, 967 (D.C. Cir. 1997)).

due to intervening events, such as the death of the patient, were later rendered unnecessary for diagnosis or treatment.[54] Consider also the importance of quickly diagnosing patients. Where a patient presents symptoms consistent with several potential diagnoses, a doctor might properly order a number of different tests, and a hospital would properly perform those tests, even though the results of one test might ultimately render the others irrelevant or indicate that a wholly different battery of tests was necessary. Were the doctor, instead, to order only a single test at a time in order to avoid testing for conditions that might later be ruled-out, the diagnosis could be needlessly delayed, thus subjecting the patient to unnecessary risk.

Second, Smith argues that separate billing for the Technical and Professional Components of radiological studies simply is not allowed under Medicare/Medicaid rules. To support this conclusion, which runs directly contrary to Judge Dorsey's holding, Smith notes in pertinent part: (1) that 42 U.S.C. § 414.40(b)(2) "explains that a diagnostic radiological service is comprised of 'a technical component (taking the test) and the

---

[54] Smith also argues that the submission of a claim for a non-finalized study constitutes fraud because it implicitly certifies to the government that the study was not just reasonable and medically necessary at the time it was taken, but that it was later used for the diagnosis or treatment of a patient as well. Smith, however, provides no basis in law for this implied certification theory, and there is strong evidence against it. See infra note 56.

professional component (the interpretation)'"; (2) that Medicare Carriers Manual 15900(20) "states that radiology services 'codes generally have both a professional and technical component'"; (3) that "there are no billing codes in the Manual for Technical Component Only (sic) for radiology services"; and (4) that 42 C.F.R. § 411.351 "links the technical component and the corresponding professional component by stating that the list of radiology services listed on the CMS website includes both of those components".[55]

This argument also is not persuasive. As should be apparent, the cited authorities facially do not prove Smith's assertion that hospitals cannot bill separately for the Technical Component of radiological studies. Rather, that those authorities note the existence of two separate components suggests to the contrary. Further, as Judge Dorsey noted previously, hospitals use a different form to bill for the Technical Component of studies than doctors use to bill for the

---

[55] Id. at 7-8.  Smith also cites State v. Evans, 155 Misc.2d 348, 589 N.Y.S.2d 223 (N.Y.Sup. 1992), for the proposition that an entity may not bill the government for the Technical Component of a radiological study without also completing the Professional Component of that study.  However, Evans, which parenthetically refers to New York law and not to federal law, only holds that an entity may not bill for both the Technical and Professional Components of a radiological study unless the entity has completed both components.  Smith further cites a Program Memorandum from the U.S. Department of Health and Human Services, which oversees Medicare/Medicaid, for the proposition that "a laboratory or other provider may not report on a claim for Medicare payment a diagnosis code (sic) in the absence of physician-supplied diagnostic information supporting such code."  However, the memorandum refers to "physician billing", not to hospital billing.  See also NYPH Letter at 5 (block quote does not refer to hospital billing because it is a CMS memorandum).

Professional Component of those studies (namely the HCFA-1450 Form, also known as the UB-92 Form, instead of the CMS-1500 Form), and Smith's own complaint recognizes that the Technical and Professional Components of radiological studies are treated distinctly under Medicare/Medicaid rules.[56]

Third, Smith argues, without citing any supporting authority, that hospital technicians are not entitled to rely on a doctor's order for a radiological study and, instead, must unilaterally determine whether the study is reasonable and necessary for the diagnosis or treatment of a patient <u>before even taking</u> the study.[57]  Absent some authority to the contrary, we decline to overrule Judge Dorsey's conclusion that a hospital has no such duty to investigate what amounts to the Professional Component of a radiological study.  Moreover, Smith seems to acknowledge in his August 2, 2006 letter that the responsibility

---

[56] <u>Smith</u>, 415 F.Supp.2d at 90-94 ("The HCFA-1450 form does not contain the same express certification as does the CMS-1500 form. The HCFA-1450 form does not contain the certification that the services in question 'were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision,' only requiring providers to certify that the services 'were medically indicated and necessary' in the event that the hospital is seeking CHAMPUS reimbursement").  <u>See also</u> Third Amended Complaint, ¶¶ 14-15, 20, 29 (Technical Component covered under both parts A and B of Medicare regulations; Professional Component only covered under part B); <u>see also</u> NYPH Letter at 2, n.2 ("A bill to Medicare must be presented on either a form UB-92 (for claims submitted by a hospital (i.e., for the technical component of a service)) or CMS form 1500 (for claims submitted by a physician (e.g., for the professional component)).

[57] Smith Letter at 7 ("Medical necessity must be established before, not after, the technical component is created.").  Smith also contests Judge Dorsey's apparent assumption that radiological studies are always ordered by physicians.  <u>Id.</u>  However, Smith does not allege in his complaint that NYPH billed for studies that were not ordered by doctors.

of determining whether radiological studies are in fact medically necessary falls to physicians and not to hospital technicians.[58]

Finally, Smith suggests that hospitals at least have a duty to refrain from billing for radiological studies that they know, in advance, are not medically reasonable and necessary.[59]  Smith seems to suggest in his papers that NYPH and Cornell conspired together to bill for radiological studies that they knew never had, and never would have, any medical utility.[60]  This last argument fails as well.  Although it offers a potential explanation for how Cornell could be responsible under the FCA even though Cornell is not alleged to have submitted any fraudulent bills to the government, it adds nothing to support Smith's FCA fraud claim because the allegations of billing for knowingly worthless studies are raised for the first time in Smith's Letter and are not asserted anywhere in the Third Amended Complaint.  We agree with Judge Dorsey's holding and dismiss Smith's FCA fraud claim.  In any event, we note that Smith has not provided the Court with any basis for concluding that Judge Dorsey's holding constituted clear legal error.

---

[58] Id. ("A physician must establish that the technological component, which exposes patients to radiation, is medically necessary prior to the performance of the service").

[59] Id. at 3, 9.

[60] Id.

## 2.   Retaliation Claims

We now turn to Smith's claims for retaliation under the FCA and under New York Labor Law Section 741.[61]   NYPH argues that Smith cannot maintain retaliation claims against it because Smith was never an "employee" of NYPH and because Smith has failed to state facts sufficient to maintain a claim for retaliation.   Cornell concedes that Smith was its "employee", but argues that Smith has failed to adequately allege retaliation claims against it and that his putative retaliation claims are barred by the applicable statutes of limitations.

### a.   Standing

By the text of the FCA and of Section 741, a plaintiff must be an "employee" of the accused defendant in order to bring an action for retaliation under either of those statutes.   See FCA § 3730(h); United States ex rel. Sarafoglou v. Weill Medical College of Cornell University, New York-Presbyterian Hospital et al., 451 F.Supp.2d 613 (S.D.N.Y. 2006); N.Y. CLS Labor § 741. In its papers, NYPH argues that Smith cannot be an employee of NYPH because he was an employee of Cornell, citing Alcena v. Raine, 682 F.Supp.261, 263 n.1 (S.D.N.Y. 1998), inter alia, for the proposition that "courts have held that physicians employed

---

[61] Defendants acknowledge that Smith may plausibly maintain his retaliation claims notwithstanding our dismissal of his FCA fraud claim.   See Mikes, 889 F.Supp. at 752; see also Faldetta v. Lockhead Martin Corp., No. 98 Civ. 2614, 2000 WL 1682759 at *11 (S.D.N.Y. Nov. 9, 2000) (activities may be protected under the FCA even where an FCA suit has not been filed).

by Cornell were not employees of New York Hospital, the predecessor of NYPH".[62]

NYPH makes a colorable argument that it did not actually employ Smith, but the argument is not sufficient to support a dismissal of Smith's retaliation claims.  First, Smith has plainly alleged that NYPH was his employer:  Paragraph 6 of the Third Amended Complaint states that "Defendant New York Presbyterian Hospital is a corporation existing in the State of New York that at all times pertinent hereto was the employer of Plaintiff-Relator Smith".[63]  Second, although the authorities cited by NYPH suggest that physicians who hold faculty positions at medical schools and staff positions at hospitals typically are employees of the former and not of the latter, none holds that such a physician cannot be an employee of both. Accordingly, we decline to dismiss Smith's retaliation claim against NYPH for lack of standing.  See e.g. Sarafoglou, 451 F.Supp.2d at 625-26 ("NYPH tries to argue that plaintiff cannot consider herself an employee of NYPH because she was merely an 'assistant attending physician.'  At this stage of the proceedings, however, I must take plaintiff's allegations as true.  Hence, NYPH's argument that plaintiff was not an employee of NYPH does not help its cause [though] NYPH may renew this argument at . . . summary judgment") (citations omitted).

---

[62] NYPH Letter at 8.
[63] See also Third Amended Complaint, ¶ 10.

### b.   Statutes of Limitations

### i.   FCA Retaliation

Regarding Smith's FCA retaliation claim, Cornell notes that it declined to renew Smith's employment 21 months before Smith raised that claim, and argues that the claim is thus time-barred under the one-year statute of limitations provided by New York Labor Law § 740(4)(a) (employer shall not take retaliatory action against an employee who discloses or threatens to disclose a policy or practice that presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud) ("Section 740").   Cornell argues that we should apply this statute of limitations because Section 740 is the most analogous New York state statute to the FCA's prohibition on retaliating against employees.   We decline to take this approach and, instead, apply a three-year statute of limitations to Smith's FCA retaliation claim.

Our analysis begins with <u>Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson</u>, 545 U.S. 409 (2005). In <u>Graham</u>, the Supreme Court held that the six-year statute of limitations provided in the FCA does not apply to FCA claims for retaliation.   In the absence of an applicable, statutory limitations period, courts must look to the most closely analogous state law to determine what limitations period applies.   <u>Id.</u> (FCA civil actions for retaliation should be

brought in the time provided by the most closely analogous state limitations period).  In McKenna on Behalf of U.S. v. Senior Life Management, Inc., 429 F.Supp.2d 695 (S.D.N.Y. 2006), Judge McMahon expressly addressed the question of which statute of limitations should apply to a claim for FCA retaliation brought in a New York court.  Judge McMahon considered the limitations period provided by Section 740 as well as those provided by N.Y. Executive Law § 296 and N.Y. Labor Law § 215, but rejected all three in favor of New York's residuary three-year statute of limitations for personal injury claims.  Judge McMahon settled on the three-year period, noting that the Supreme Court indicated its support for the use of a state's residuary statute of limitations in Graham, 545 U.S. at 419, and expressly rejected the limitations period provided for in Section 740, finding that section to be substantively distinct from the FCA:

> It is well settled as a matter of New York law that Labor Law § 740, while denominated a whistle-blower statute, would afford relator absolutely no relief.  That is because the targets of the two laws are different.  The False Claims Act seeks redress for harms caused to the Government by the presentation of false claims.  Labor Law § 740 does not.  It was designed to protect against substantial and specific dangers to public health and safety.

Id. at 698.

We agree with Judge McMahon that New York's residual three-year statute of limitations for personal injury claims should

apply to Smith's claim for retaliation.  Since Smith filed his
FCA retaliation claim within three years of his termination from
Cornell, which Cornell admits, we decline to dismiss that claim
as untimely.[64]

### ii.  Section 741 Retaliation

Cornell next argues that Smith's Section 741 claim is
untimely because Smith did not allege that claim until he filed
his Third Amended Complaint on November 24, 2004, more than two
years after Cornell gave Smith notice, on June 28, 2002, that
his employment would not be renewed.  Smith acknowledges that
Section 741 claims must be brought within two years of receiving
notice of the complained-of conduct,[65] but argues that his
complaint alleges retaliation that continued until the end of
his employment in 2003.

Smith directs the Court to paragraphs 68, 69 and 72 of his
complaint, in which he alleges that he wrote letters to Dr.
Gotto in October of 2002 and March of 2003 to complain about
improper billing at NYPH and about retaliation from Dr. Sostman.
He also directs the Court to paragraphs 75 and 76, in which he
notes that, in May of 2003:  (1) he received a threatening
letter from Steve Forman, and (2) Dean Gotto refused to respond

---

[64] We further note that Smith appears to have filed an FCA retaliation
claim against defendants in his complaint filed July 12, 2002, making that
claim timely under even a one-year statute of limitations.  See Docket Number
152 at 136-37; see also Plaintiff's Opposition to Cornell's Motion at 30.
   [65] See N.Y. Labor Law § 740(4)(d).

to his request for a leave of absence.  From these allegations it appears that Smith has stated a timely claim for retaliation under Section 741 since, at the very least, he allegedly received a threatening letter from Steve Forman within two years of filing his Section 741 claim.  However, we decline to rule either for or against Smith on this issue at this time because it is unclear whether some of the actions alleged by Smith, such has Steve Forman's threatening letter, constitute "retaliation" under state law, and because we dismiss Smith's Section 741 claim on other grounds discussed <u>infra</u>.

### c.  Legal Sufficiency of Retaliation Claims

Defendants further challenge the legal sufficiency of Smith's claims for retaliation.  We address each of these claims in turn.

### i.  FCA Retaliation

To state a claim for retaliation under the FCA, a plaintiff must allege that:  (1) he was engaged in conduct protected under the FCA; (2) the defendant knew or was aware that he was engaged in protected conduct; and (3) plaintiff was terminated or otherwise retaliated against because of the protected conduct. FCA § 3730(h); <u>Mikes</u>, 889 F.Supp. at 752.  "Protected conduct" is defined as activity that might provide a "reasonable basis" for bringing a <u>qui tam</u> action under the FCA, and a defendant is deemed to have known or been aware of the activity if it had

"reason to believe" that the plaintiff was contemplating a qui tam action, whether or not the plaintiff actually threatened such an action. Id. at 752-54.

Smith has adequately alleged that he was engaged in protected conduct, that he gave NYPH and Cornell notice of that conduct, and that he faced retaliation as a result. Smith states, in his complaint and in the documents incorporated into his complaint by reference, that he investigated what he believed to be fraudulent billing at NYPH, that he informed high-level personnel of these problems at both NYPH and Cornell, and that NYPH and Cornell responded by retaliating against him.[66] In paragraph 67 of the complaint, for instance, Smith states that he complained to Dr. Sostman and the NYPH and Cornell administrations about improper bills sent to Medicare/Medicaid for "completed but not read radiology studies" and, at paragraph 207, he alleges that "because of his investigation and reporting of the fraud[] . . . [he] was harassed and was discriminated against in the terms and conditions of his employment . . . .".[67] He goes on to state that the harassment included, among other things, a loss of administrative privileges and Cornell's

---

[66] Though we have held that the concerns raised by Smith do not legally amount to fraudulent claims, we do not hold that his investigation and complaints about improper billing could not, at the time made, reasonably have been considered to be leading toward a lawsuit under the FCA.
[67] Third Amended Complaint, ¶¶ 66-69, 207, 209.

refusal to renew his employment in June of 2002.[68]   Thus, Smith has alleged that he was engaged in activity that could reasonably lead to the filing of an FCA claim (his investigation into "improper" billing of Medicare/Medicaid), that NYPH and Cornell knew about this activity (given that Smith made it clear to their administrations and employees in letters and personal meetings), and that Smith faced retaliation (including the discontinuance of his employment) as a result.

Accordingly, we decline to dismiss Smith's FCA retaliation claim.   Our holding, however, should not be taken as an indication that we find Smith's retaliation claim to have any merit beyond the fact that Smith's pleadings are sufficient to overcome a Rule 12(b)(6) motion.   Defendants have identified a number of flaws in Smith's retaliation claim which, though more properly argued on a motion for summary judgment, appear to be compelling in some respects.   Moreover, we note that much of the "retaliation" alleged by Smith, including the purported reduction in his administrative access and the decision not to renew his contract, could be seen as valid and sensible responses to Smith's actions.   If NYPH and Cornell considered Smith to be relentlessly pursuing so-called "fraud" claims at their expense and believed that those claims had absolutely no legal merit, it would not be unreasonable for them to respond

---

[68] Id.

by, among other things, denying Smith unnecessary administrative access and declining to rehire him when his contract expired.

### ii.  Section 741 Retaliation

Defendants next argue, and we agree, that Smith has failed to assert a cognizable Section 741 claim.  Section 741 prohibits healthcare employers from penalizing employees because of complaints of certain employer violations.   Section 741(2) provides that:

> no employer shall take retaliatory action against any employee because the employee does any of the following:  (a) discloses or threatens to disclose to a supervisor, or to a public body an activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes <u>improper quality of patient care</u>; or (b) objects to, or refuses to participate in any activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes <u>improper quality of patient care</u> (emphasis added).

Section 741(1)(d) further defines "improper quality of patient care" as:

> any practice . . . which violates any law, rule, regulation or declaratory ruling . . . where such violation relates to matters which may present a <u>substantial and specific danger</u> to public health or safety or a <u>significant threat</u> to the health of a specific patient (emphasis added).

Smith clearly has not alleged that defendants' practices amounted to "improper quality of patient care" within the meaning of Section 741(1)(d) because he has not alleged that

defendants' actions presented either a substantial and specific threat to public health or safety, or a significant threat to the health of a specific patient.[69]  As such, Smith's Section 741 claim is dismissed.

### 3.  Defamation

Defendants next argue that Smith's complaint fails to state a cognizable claim for defamation.  Smith generally responds that all of his non-FCA claims should survive a motion to dismiss.

To establish a claim for defamation under New York law, a plaintiff must allege "a false statement, published without privilege or authorization to a third party, constituting fault ... [that] either cause[d] special harm or constitute[d] defamation per se." Peters v. Baldwin Union Free School Dist., 320 F.3d 164, 169 (2d Cir. 2003) (quoting Dillon v. City of New York, 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)).  Under Federal Rule of Civil Procedure 8(a)(2), pleadings of defamation made in federal court must be detailed and informative enough to put the defendants on sufficient notice of the allegedly defamatory communications.  Kelly v Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986).  Where a complaint alleges claims for

---

[69] The closest Smith comes is to allege, without supporting detail, that:  (1) some radiological studies were taken without sufficient evidence of medical need even though the taking of such studies exposes patients to radiation; (2) defendants' practices led to "unfortunate . . . mishaps" with some patients; and (3) defendants' practices led to "substandard" and "inadequate" care.  Id. ¶¶ 12, 68, 87.

defamation without any indication as to what statements were made, when they were made, or to whom they were made, for instance, the claims warrant dismissal under Rules 12(b)(6) and 8(a)(2). Bramesco v. Drug Computer Consultants, 834 F.Supp. 120, 122 (S.D.N.Y. 1993) (dismissing defamation claims with prejudice where pleadings were "bereft of content"); see also Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759, 763 (2d Cir. 1990).

Here, Smith alleges that he has been repeatedly defamed by defendants and their employees, but fails to allege, with any specificity, the content, timing or recipients of the allegedly defamatory communications.[70]   Instead, he relies on conclusory averments such as his assertion that defendants have "engaged in a pattern of repressive, unwarranted and pre-textual disparagement, in the form of unfounded and false statements about Plaintiff-Relator Smith's reporting and complaints about the compromise of patient care and safety, along with violations of the compliance policies and billing fraud."[71]   This and Smith's other allegations are so conclusory and bereft of content as to utterly fail to put defendants on notice of the defamation claims raised against them.  Since nothing in Smith's

---

[70] In fact, he has not alleged a single defamatory statement. See generally id.

[71] Id. ¶ 261.  Smith's complaint also refers the reader to statements "referenced in Paragraphs 107, 110 and 111", but there are no such paragraphs in the complaint and the paragraphs that might plausibly correspond to those numbers do not allege defamatory statements.

complaint suggests that he has any specific allegations to offer in support thereof, his defamation claims are dismissed with prejudice.

### 4.   IIED and NIED

Defendants also challenge Smith's IIED and NIED claims, which we now dismiss with prejudice as well.   Under New York law, a claim for IIED requires a showing of extreme and outrageous conduct, intent to cause or reckless disregard of a substantial probability of causing severe emotional distress, a causal connection between the conduct and the plaintiff's distress, and severe emotional distress.   Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (citing Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 121 (1993)); see also Walker v. New York City Transit Auth., No. 99 Civ. 3337(DC), 2001 WL 1098022 (S.D.N.Y. Sept. 19, 2001).   Conduct is deemed to be "extreme and outrageous" only if it goes beyond all possible bounds of decency and must, therefore, be regarded as atrocious and utterly intolerable in a civilized society.   Holwell, 81 N.Y.2d at 122.   Smith has not alleged any fact in his complaint that amounts to a suggestion of extreme and outrageous conduct by defendants or any of their employees.[72]   Nor has Smith provided any fact, other than his own statements parroting the law's requirement, that he endured severe emotional distress due to

---

[72] Smith calls defendants' conduct "outrageous", but provides no fact to support that assertion.  See e.g. id. ¶ 366.

defendants' conduct.[73]  While these are not the only deficiencies in Smith's pleading of this claim, they alone require dismissal.

Smith also has not stated a viable claim for NIED, inter alia, because he has not stated any fact suggesting that he suffered an emotional injury as a result of a breach of a duty by defendants that unreasonably endangered his physical safety.[74] See Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996) ("In order to support a claim under the direct duty theory, [as opposed to the bystander theory], plaintiff must prove he suffers from an emotional injury as a result of defendant's breach of a duty which unreasonably endangered his own physical safety") (citing Bovsun v. Sanperio, 61 N.Y.2d 219, 230-31 (1984)); see also U.S. ex rel. Ben-Shlush v. St. Luke's-Roosevelt Hosp., 2000 WL 269895, *4 (S.D.N.Y. 2000).  Moreover, Smith is precluded from bringing a claim arising out of his employment for injuries based on negligence because New York's Workers' Compensation Law provides the exclusive remedy for such injuries.  See Arroyo v. WestLB Admin., Inc., 54 F.Supp.2d 224, 232 (S.D.N.Y. 1999) ("In New York, recovery for accidental injuries arising out of and in the course of employment, including injuries caused by an employer's negligence, is governed by the Workers' Compensation Law.") (citing O'Brien v.

---

[73] Id. ¶ 317.
[74] Smith merely asserts that defendants' conduct was reckless with regard to the chance that it would cause Smith some unstated "physical sickness".  Id. at 367.

<u>King World Prods., Inc.</u>, 669 F.Supp. 639, 641 (S.D.N.Y. 1987) (citing <u>Nash v. Oberman</u>, 498 N.Y.S.2d 449 (2d Dept. 1986))). Accordingly, Smith's claim for NIED is dismissed as well.

### 5. Breach of Contract

Finally, Cornell challenges Smith's claim for breach of contract, arguing that Smith has not alleged that Cornell breached any specific provision of his employment contract and that, to the extent Smith's claim is based on Cornell's alleged failure to follow its own policies or practices, his claim is defective under the rule of <u>Maas v. Cornell University</u>, 94 N.Y.2d 87, 93 (1999) (holding that Cornell's failure to follow its internal policies and procedures did not provide basis for breach of contract claim). <u>See also</u> <u>Mason v. Central Suffolk Hospital</u>, 3 N.Y.3d 343, 348 (2004) (no breach of contract lies in failure to follow institutional documents such as bylaws and procedures). In his complaint, Smith alleges that Cornell's retaliation against him constituted a breach of the implied covenants of good faith and fair dealing, as well as a breach of Cornell's policies on freedom of expression and corporate compliance.

Regarding Smith's complaints that Cornell failed to follow its own policies, and especially in light of Smith's failure to explain how any failure to follow university policy breached a contract between Smith and Cornell, we agree with Cornell that

these pleadings fail as a matter of law.  Mason, 3 N.Y. 343 at 348-50 (no action for damages may be based on a violation of medical staff bylaws, unless clear language in the bylaws creates a right to relief).  This leaves only Smith's generalized claims regarding Cornell's implied covenants of good faith and fair dealing.  As a matter of law, a contract claim asserting breach of the implied covenants of good faith and fair dealing does not survive a motion to dismiss when it is based only on generalized allegations and grievances.  Stanford Square, L.L.C. v. Nomura Asset Capital Corp., 228 F.Supp.2d 293, 300 (S.D.N.Y. 2002).  Rather, a defendant must allege the specific instances or acts that amounted to the breach of those covenants under the contract in question.  Id. ("A claim asserting a breach of the implied covenant of good faith and fair dealing would not survive dismissal as a matter of law pursuant to Fed.R.Civ.P. 12(b)(6) if it 'fail[ed] to describe the specific actions on the part of ... defendants that allegedly breached this duty.'") (quoting Yucyco Ltd. v. Republic of Croatia, No. 96 Civ. 5559 (DC), 1997 WL 728173, *6 (S.D.N.Y. Nov. 19, 1997)).  Here, Smith merely incorporates the numerous allegations in his complaint into his breach of contract claim and then states that some of the alleged activity amounted to a breach of the implied covenants.  At no time does he explain which of those actions constituted a breach of those

covenants or how the covenants were breached.    Accordingly, we dismiss   Smith's   conclusory,   catch-all   claim   for   breach   of contract.[75]

## CONCLUSION

For   the   reasons   provided   above,   we   dismiss   Smith's   FCA fraud claim with prejudice pursuant to Rules 9(b) and 12(b)(6), and dismiss Smith's claims for defamation, IIED, NEID, breach of contract and violations of Section 741 with prejudice as well. Smith's only remaining claim in this case is his claim for FCA retaliation.

**IT IS SO ORDERED.**

Dated:    New York, New York
          July 18, 2007

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[75] We also note that the practical effect of accepting plaintiff's contract claim based solely on his FCA allegations would be to return the statute of limitations for FCA retaliation claims to the six-year limit expressly rejected by the Supreme Court in Graham County.

46

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for Relator Robert C. Smith
Stephen M. Kohn, Esq.
Michael D. Kohn, Esq.
Kohn, Kohn & Colapinto, LLP
3233 P Street, N.W.
Washington, DC 20007


Counsel for Defendant NYPH
Stuart M. Gerson, Esq.
Epstein, Becker & Green
250 Park Avenue
New York, NY 10177


Counsel for Defendant Cornell
Gary P. Schulz, Esq.
Nixon Peabody LLP
900 Stewart Avenue
Garden City, NY 11530-4838